[Cite as *State v. Eaton*, 2020-Ohio-3208.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-18-1183

      Appellee                              Trial Court No. CR0201701980

v.

 Jamaine Eaton                          **DECISION AND JUDGMENT**

      Appellant                             Decided:  June 5, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Jamaine Easton, appeals from the July 25, 2019 judgment of the

Lucas County Court of Common Pleas convicting him of retaliation, a violation of R.C.

2921.05(A) and (C), and intimidation, a violation of R.C. 2921.03(A) and (B), and

sentencing him to eighteen months of imprisonment on each count, to be served

concurrently because the offenses were found to be allied offenses.  The sentences were ordered to be served consecutive to a nine-year sentence imposed in Lucas County Court of Common Pleas case No. CR0201502214.  For the reasons which follow, we affirm in part and reverse in part.

{¶ 2} On appeal, appellant asserts the following assignments of error:

I.  The trial court erred in sentencing Appellant consecutively without making the proper findings under R.C. 2929.14(C).

II.  The jury's verdict was against the manifest weight of the evidence presented at trial.

III.  The trial court committed error to the prejudice of Appellant by imposing costs without consideration of Appellant's present or future ability to pay.

{¶ 3} In his first assignment of error, appellant asserts that the trial court erred by imposing a sentence in this case to be served consecutively to a sentence imposed in another case without making the proper findings under R.C. 2929.14(C)(4) at the sentencing hearing.

{¶ 4} Our standard of review of a felony sentence is whether there is clear and convincing evidence in the record to support the sentencing court's findings under R.C. 2929.14(C)(4) or whether the sentence is otherwise contrary to law.  R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St. 3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7.

2.

{¶ 5} Generally, multiple terms of incarceration are to be served concurrently unless the trial court, in the exercise of its discretion, orders the sentences to be served consecutively. R.C. 2929.41(A) and (B)(2); R.C. 2929.14(C)(4). Before imposing consecutive sentences, however, R.C. 2929.14(C)(4) mandates that the trial court find consecutive sentences are "necessary to protect the public from future crime or to punish the offender," "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of the following circumstances under R.C. 2929.14(C)(4) is present:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

3.

{¶ 6} The trial court must engage in the correct analysis, state its statutory findings during the sentencing hearing, and incorporate those findings into its sentencing entry. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 253, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. A word-for-word recitation of the statutory language is not required so long as the record supports the trial court's findings. *Beasley* at ¶ 259. The failure to comply with statutory requirements renders the sentence voidable, not void. *State v. Harper*, Slip Opinion No. 2018-1144, 2020-Ohio-2913, ¶ 4.

{¶ 7} While the court made the correct findings in the sentencing judgment, the court did not make such precise statements at the sentencing hearing. Appellee asserts that although the court did not quote the statute verbatim, the trial court made statements which satisfied its duty to make certain statutory findings.

{¶ 8} Regarding the necessity requirement, the court stated: "I think you did a very stupid thing I think that was the word you used. You just weren't thinking, but acting out of not thinking has consequences. Now, whatever we do here today is not going to destroy your life, but it's going to have some sting to it." Furthermore, regarding appellant's criminal history, the court stated:

> I note that you entered into the system back in 2006 when you were 14. You had a delinquency for breaking and entering, a number of offenses. There were a number of attempts to work with you. You were certified over as an adult back in 2011 on a CCW. You had an assault in

'12. You had a domestic violence and assault; these were dismissed because the witnesses failed to appear. You had a number of traffic offenses. You had an ag robbery with a deadly weapon, which was specified or indicated as an F1 back in 2015. This is one that was reduced and you got six years, plus three mandatory for the gun. That's the one you're currently serving right now. And then you caught these two cases here today.

Finally, regarding the proportionality requirement, the court stated: "finding that pursuant to R.C. 2929.14(b) that the shortest prison term possible would demean the seriousness of the offenses and not adequately protect the public, * * * the Court imposes a greater than the minimum term."

{¶ 9} Upon a review of the sentencing hearing as a whole, we find the court's statements do not reflect an intentional consideration of the requirements of R.C. 2929.14(C)(4). From a reading of the entire sentencing hearing, it is not clear if the court was discussing the consecutive sentencing factors. The trial court did not indicate that appellant's conduct or criminal history was of such a nature that the court determined it was necessary that consecutive sentences were imposed to protect the public or punish appellant. The court made reference to "R.C. 2929.14(b)" and verbalized its proportionality review, but it appears that this was done in connection with its determination of whether to impose more than the minimum sentence. These statements do not seem to relate to the imposition of consecutive sentences.

5.

{¶ 10} Therefore, appellant's first assignment of error is well-taken.

{¶ 11} In his second assignment of error, appellant asserts that his convictions were contrary to the manifest weight of the evidence because appellee did not meet its burden of persuasion as to each count based on the evidence rather than the seriousness of the charges.

{¶ 12} A challenge to the weight of the evidence questions whether or not the greater amount of credible evidence was admitted to support the findings of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997). When weighing the evidence, the appellate court must consider whether the evidence is conflicting or whether reasonable minds might differ as to the inferences to be drawn from it, the weight of the evidence, and the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Eastley* at ¶ 20, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983) (other citations omitted). When weighing the evidence, the appellate court must presume the factfinder properly assessed the evidence. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984) (citation omitted).

{¶ 13} In order to establish retaliation, R.C. 2921.05(A) requires the state must prove appellant "purposely and * * * by unlawful threat of harm to any person or property, * * * retaliate[d] against a public servant * * * who was involved in a * * *

6.

criminal action or proceeding because the public servant * * * discharged the duties of the public servant." To establish, intimidation, R.C. 2921.03(A), effective November 6, 1996, requires the state must prove appellant "knowingly and * * * by unlawful threat of harm to any person or property * * * attempt[ed] to influence, intimidate, or hinder a public servant * * * in the discharge of the person's duty." The issue in this case is whether the evidence established that appellant wrote the letter threatening the judge.

{¶ 14} The following evidence was admitted in this case. Judge Mandros and his criminal bailiff for the Lucas County Court of Common Pleas testified the judge received a letter on March 23, 2017, which contained the purported signature of appellant and a return address from appellant at a state institution and made general threats to harm him and his family. The judge testified that he had sentenced appellant in 2015 to a term of 6 years of imprisonment, less than the possible maximum of 11 years, with an additional mandatory 3 years for a gun specification, and retains continuing jurisdiction over the sentence.

{¶ 15} A forensic scientist with the Bureau of Criminal Investigations ("BCI") was qualified as an expert in the field of latent print analysis without objection. She examined the letter and envelope for possible latent impressions and explained the process by which she was able to obtain four latent fingerprints from the letter and envelope. Upon analysis, she concluded to a reasonable degree of scientific certainty, and the parties stipulated to her findings, that one of the prints on the back side of the envelope was made by appellant's left index finger and the print on the front side of the

7.

envelope was made by Antonio Campbell, an inmate who was housed at the same prison as appellant at the time of this incident. The forensic scientist testified it was possible for an object to have multiple prints, especially paper which holds onto prints for a long time and that the lack of a print did not mean appellant had not touched it. She did rule out appellant as having made the other print found on the back side of the envelope and on the letter. A fingerprint database, AFIS, did not reveal any other source for the prints. Another print found was not suitable for comparison and, therefore, the source could not be determined.

{¶ 16} Another forensic scientist with the BCI, who specialized in the field of handwriting, testified she examined the letter and envelope in comparison to appellant's handwriting exemplar prepared for purposes of comparison. While there were some indications appellant may have written the letter to the judge, she could not conclude to a reasonable degree of scientific certainty that he did write the letter. A second letter threatening appellant had been written in cursive and, therefore, could not be used for comparison.

{¶ 17} Campbell, an inmate, testified he was housed at the Lucasville Correctional Institution at the same time as appellant and only recalled having played basketball with him. Campbell denied writing the letter to the judge or talking to appellant about it. Campbell believed appellant could have asked for an envelope, which Campbell would have supplied from his supply of free envelopes the prison provided each month, which

8.

he did not use.  Campbell also could have given the envelope to a porter to pass to appellant because Campbell only saw appellant at dinner and recreation time.

{¶ 18} Nichole Benavides testified she started dating appellant shortly before his imprisonment in 2015 and communicates with him daily, corresponds with him, and visits him in prison.  Admitted into evidence was a letter Benavides recalled receiving, which indicated appellant owed money and threated him and his family.  Included with the letter was a photograph of appellant's son, upon which Benavides had previously written, "your twin," but someone else had drawn a target.  The return address name on the envelope was "B. Johnson."  Benavides denied appellant warned her such a letter would be coming and could not fully recall two conversations with appellant where he indicated two letters were mailed to her.

{¶ 19} Benavides showed the letter to appellant when she visited him, and he told her to call the prison and follow their instructions.  Benavides faxed the letter to the prison, but she never heard back about it until an investigator interviewed her about the letter sent to the judge.  Eventually, she felt compelled to give the original letter she had received to her lawyer because the detective indicated she could be charged with an offense for not cooperating.

{¶ 20} Benavides testified at trial that appellant used to talk about wanting to move back to Toledo to be closer to her and his child, but she could not recall appellant indicating he had a plan to make that happen.  However, she also admitted she had told the investigator that appellant told her he planned to threaten the judge to get a transfer.

9.

She testified she had not taken appellant seriously and told him it was a foolish idea. She also told the investigator appellant had told her he was sending a letter, but she never saw it. The investigator had showed Benavides the letter sent to the judge, but she testified it did not looked like appellant's handwriting.

{¶ 21} An institutional investigator at Lucasville prison testified he obtained appellant's DNA. At that time, appellant was housed in the extended restrictive housing area ("ERH"), and spent 22-23 hours a day in a single occupant cell except for medical appointments and recreation in an ERH recreation cage. A visitation log showed that Benavides was his most frequent visitor, visiting him 18 times from December 2015, through July 2017, including three times during the period of March and April 2017. The ERH inmates are allowed little possessions but can send and receive mail. Incoming mail is screened for contraband, outgoing mail is not screened. Furthermore, the investigator testified that every inmate is assigned a specific number, but inmates refer to each other by nicknames, not numbers. The investigator also obtained appellant's recorded phone calls made in March and April 2017, and searched appellant's cell. No other inmate would have had access to appellant's cell and could only have taken something placed next to the cell bars. The investigator had no knowledge of any assaults on appellant by other inmates.

{¶ 22} A correction officer at the Lucasville prison testified he also searched appellant's cell and found 4-5 photos at the back of the 8x10 cell, which were admitted into evidence. He further testified that when an inmate is sent to another location for

10.

discipline, an officer removes all personal items and catalogs them before a porter cleans the cell.

{¶ 23} A detective for the Toledo Police Department, investigative service bureau, testified he started an investigation of this case for the prosecutor's office. He reviewed the letter sent to the judge, obtained appellant's DNA evidence, and delivered the letter to the BCI for analysis for DNA, fingerprints, and handwriting analysis. When he talked to appellant about the investigation, appellant appeared very nervous. He was bent over with his head down and he was perspiring so much that the sweat puddled on the floor. The detective learned that insufficient DNA was found on the papers to make an identification.

{¶ 24} The detective also recalled speaking to Benavides, who admitted she sent the letter to the prison after appellant had forewarned her it was coming and that appellant also told her he was sending a letter to the judge. The detective warned Benavides to be careful and tell the truth or she could get in trouble for her boyfriend. The detective obtained the original letter that was faxed to the prison (postmarked March 24, 2017), as well as other letters appellant had sent Benavides. The detective only sent the letters sent to the judge and prison to the BCI for handwriting analysis. He also listened to the recorded phone calls, which were admitted into evidence. In a call made March 25, 2017, appellant told Benavides she would receive two letters, one letter containing instructions about what she should do with the other letter. She faxed the letter to the prison on April 14, 2017. In a call on April 1, 2017, appellant stated he told Benavides that what he wrote in the letters needed to be done as soon as possible so what he was doing could fall into

place. In another call, appellant stated: "I don't talk to nobody here about my personal life."

{¶ 25} Appellant testified that he never sent the letters at issue. He believed Benavides was lying because she was mad about appellant talking to his child's mother when Benavides could not listen in on the phone call and that she misunderstood that the statements he made in the phone calls related to gambling. He also asserted that ex-gang members had framed him. He acknowledged that his name and the prisoner number were on the envelope of the letter sent to the judge, but asserted his name and number are at the top of his cell and he wears an ID badge. He admitted he never talked to other prisoners about his family and personal affairs, but that when he was sent to the "hole" for fighting, the porter could have picked up one of the 300-400 photographs he kept in his cell.

{¶ 26} On appeal, appellant asserts that his fingerprint was found only on the back of the envelope, not on the letter, and there was no conclusive evidence that appellant drafted the letter. He also argues Benavides's testimony lacked credibility because her statements were made solely because of threats to charge her with aiding and abetting appellant if she did not cooperate.

{¶ 27} The direct evidence of guilt in this case was that appellant's fingerprint was found on the back of the envelope. While Campbell's fingerprint was also found on the envelope, he provided a reasonable explanation for why it could have been there. The forensic scientist explained there are other reasons why the remaining fingerprints found

12.

on the letter were insufficient to be compared or how appellant could have touched the letter but no fingerprints were found on it.

{¶ 28} Furthermore, Benavides admitted she told the investigator that appellant told her he was going to write such a letter to be moved closer to Toledo. Appellant challenges her credibility on the basis that she had been threatened with charges if she did not cooperate with the investigator. The investigator admitted he merely warned Benavides of the consequences if she did not cooperate and also encouraged her to seek counsel. Benavides never testified that she felt improperly pressured by the detective. Nonetheless, the fact that she might have felt pressured to turn over the letter does not establish that she would lie about appellant's statements that he was going to send a letter to the judge.

{¶ 29} While the handwriting analysis failed to conclusively establish appellant as the author of the letter to the judge, the writing exemplar was created when appellant knew it would be used to compare his handwriting and, therefore, he had a motivation to alter his handwriting. Although Benavides denied that the handwriting matched appellant's handwriting, she had a motivation to lie and her statements were inconsistent with her statements to the investigator that appellant said he wrote the letter. Finally, appellant was never excluded as the writer of the letter and a forensic scientist found some indications that appellant's handwriting matched the letter.

{¶ 30} There was also circumstantial evidence connecting appellant to the letter. The letter contained appellant's inmate number, which he testified he has not shared with

13.

other inmates. The letter was addressed to the particular judge who had sentenced appellant. Appellant appeared nervous when the Toledo police officer came to the prison to take appellant's DNA sample. Benavides testified appellant wanted to be moved back to Toledo. Benavides also received a letter regarding threats against appellant, which included a photograph of appellant's son that he would have kept in his cell that no other prisoner could enter. While appellant alluded to a theory that he had been framed, he presented no evidence to support that theory.

{¶ 31} When all of the evidence is considered as a whole, we find the jury did not lose its way in evaluating the evidence and drawing inferences from the direct evidence. Therefore, we find that appellant's conviction was not contrary to the manifest weight of the evidence. Appellant's second assignment of error is found not well-taken.

{¶ 32} In his third assignment of error appellant argues the trial court erred by imposing costs only in the sentencing entry and not at the sentencing hearing and without consideration of whether appellant had any present or future ability to pay costs. Appellant argues the trial court did not comply with the applicable statutes and find appellant's current or future ability to pay before imposing the costs of supervision, confinement, appointed counsel, and prosecution.

{¶ 33} In its sentencing judgment, the trial court stated: "Defendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law." The court is not required to consider the defendant's ability to pay

14.

the costs of prosecution, but must do so before imposing the costs of appointed counsel and confinement.  R.C. 2947.23(A)(1)(a) (costs of prosecution); R.C. 2941.51(D) (costs of appointed counsel); R.C. 2929.18(A)(5)(a)(ii) (costs of confinement).  The costs of supervision are not at issue in this case because a prison term was imposed.  R.C. 2929.18(A)(5)(a)(i).  The state concedes the trial court was required to consider appellant's ability to pay the costs of appointed counsel and confinement and did not do so at the sentencing hearing.  We agree. Therefore, we find appellant's third assignment of error well-taken as to the costs of appointed counsel and confinement.

{¶ 34} Having found that the trial court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Lucas County Court of Common Pleas is reversed in part.  Appellant's conviction is affirmed, but the sentence is hereby vacated.  This matter is remanded to the trial court for resentencing.  Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                             _____
                                                           JUDGE

Arlene Singer, J.

                                                           _____
Christine E. Mayle, J.                                JUDGE
CONCUR.

                                                           _____
                                                             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.